**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2688

_____

GUSTAVO XAVIER,

Appellant

v.

SUPERINTENDENT ALBION SCI; ATTORNEY GENERAL PENNSYLVANIA;
DISTRICT ATTORNEY SUSQUEHANNA COUNTY

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:12-cv-01603)
District Judge: Jennifer P. Wilson

_____

Submitted Under Third Circuit L.A.R. 34.1(a):
November 18, 2022

_____

Before: HARDIMAN, PORTER, and FISHER,
*Circuit Judges*.

(Filed: December 2, 2022)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*

Gustavo Xavier seeks habeas corpus review of his state conviction for third-degree murder under a negotiated plea agreement, for which he received a sentence of 20 to 40 years. He seeks relief under 28 U.S.C. § 2254 based on a claim of ineffective assistance of trial counsel. The District Court concluded that he failed to adduce sufficient evidence showing that his trial counsel's performance fell below an objective standard of reasonableness. For the reasons that follow, we will affirm the District Court.

I

Xavier argues that his trial counsel failed to properly investigate evidence that would undermine the malice element of his homicide charge. Absent malice, he argues, he could have been tried and convicted of voluntary manslaughter, resulting in a lesser sentence. Therefore, he concludes, his counsel's assistance was ineffective, and his resulting guilty plea could not have been knowing, voluntary, and intelligent.

The homicide at issue was that of Lisa Parlanti, Xavier's then-girlfriend. Xavier struck her multiple times with a blunt object, wrapped her head in a plastic bag, and placed her body in a closet. For that, he was charged with criminal homicide and aggravated assault. In a negotiated plea agreement, Xavier entered a guilty plea to one count of Murder of the Third Degree. In exchange, the Commonwealth agreed not to seek a charge of Murder of the First Degree. The court accepted the plea.

2

Over a decade of post-conviction procedure has ensued. Xavier soon challenged his conviction through a petition for post-conviction relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"). The Court of Common Pleas denied PCRA relief on September 27, 2011. He then appealed to the Superior Court of Pennsylvania, which affirmed the denial of PCRA relief on May 23, 2012. On August 10, 2012, he filed a petition for writ of habeas corpus in the United States District Court for the Western District of Pennsylvania, which was subsequently transferred to the Middle District of Pennsylvania.

The District Court dismissed the petition with prejudice, declining to issue a certificate of appealability ("COA"). Xavier appealed, and this Court issued a COA as to two issues: "(1) whether the District Court erred in concluding that Xavier is procedurally barred from pursuing his claim that counsel was ineffective for failing to advise him that he might only be convicted of manslaughter if he opted for trial; and (2) whether counsel was ineffective for failing to challenge inculpatory statements given to investigators while Xavier was heavily medicated in the ICU." App. 5. We affirmed the District Court's denial of Xavier's claim with regard to inculpatory statements but vacated as to the Sixth Amendment claim. *Xaiver v. Superintendent Albion SCI*, 689 F.App'x 686 (3d Cir. 2017) (non-precedential). The case was remanded on the effective-assistance-of-counsel question. *Id*.

On remand, the District Court held an evidentiary hearing, taking testimony from witnesses including Xavier and his trial counsel, Linda LaBarbera. LaBarbera testified to

having discussed manslaughter with Xavier several times before he pleaded guilty and advising him that a strategy of seeking a voluntary manslaughter conviction was unlikely to succeed at trial. Xavier testified that he did not believe that they had ever discussed manslaughter prior to the entry of his plea. Judge Saporito found LaBarbera's testimony to be fully credible but Xavier's to be "only partially credible" based on his demeanor and the inconsistencies between his testimony and other evidence in the record. *Xavier v. Harlow*, 2021 WL 3520649, at *4 (M.D. Pa. May 14, 2021). Judge Saporito found Xavier's testimony to be "equivocal, at best," whereas he found LaBarbera's to be explicit that they had discussed manslaughter "on multiple occasions"—an assertion supported by her contemporaneous notes of their meetings. *Id.* at *12. The District Court found LaBarbera's advice to be reasonable under the circumstances and found no evidence of coercion, misleading statements, or undue compulsion on her part. Xavier timely appealed.

II

Petitions for writs of habeas corpus raise federal questions, giving the District Court jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(c)(1) over Xavier's appeal from the District Court's order denying his habeas petition. In reviewing the denial of a petition for a writ of habeas corpus brought under 28 U.S.C. § 2254, we "exercise plenary review over the district court's legal conclusions and apply a clearly erroneous standard to its factual findings." *Cradle v. United States ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002).

4

## III

Federal law concerning effective assistance of counsel establishes a two-prong test. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, did counsel's representation fall below an objective standard of reasonableness? *Id.* at 687-88. Second, did counsel's deficient performance prejudice the defendant in making his defense? *Id.* at 687. Because we hold that LaBarbera's representation of Xavier did not fall below an objective standard of reasonableness, we do not reach the question of prejudice.

Defense counsel in a criminal case "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691. She is obligated to make a "reasoned judgment as to the amount of investigation the particular circumstances of a given case require." *Blystone v. Horn*, 664 F.3d 397, 423 (3d Cir. 2011) (citation omitted). But she is not required to pursue "an investigation that would be fruitless, much less one that would be harmful to the defense." *Harrington v. Richter*, 562 U.S. 86, 108 (2011). The decision not to investigate "must be directly assessed for reasonableness in all the circumstances" but with "a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

Xavier has failed to demonstrate that LaBarbera's counsel fell below an objective standard of reasonableness. When she advised Xavier concerning his plea, she had seen the crime scene photos and could appreciate the extreme violence of the crime. She reviewed documents detailing the eighteen-to-twenty-two injuries to Parlanti's head. She

5

knew that Xavier had taped a plastic bag over Parlanti's head before stuffing her in a closet. She could reasonably judge the likely effect that information would cause if heard by a jury. She knew that it is difficult to persuade a jury that a homicide perpetrator involuntarily "snapped" in a way that would undermine a finding of malice. And she knew that Xavier had testified that he was "not drunk and did not use drugs" on the night of the homicide, which would make it more likely for him to be convicted of Murder of the First Degree rather than of the Third.[1]

Xavier's arguments to the contrary are unavailing. Much of the testimony that he notes could have been taken in 2009 is ambivalent as to the question of malice. *See* Appellant Br. at 19-20. Witness statements indicate a mutually abusive relationship between Xavier and the victim as well as drug use by Xavier. *See id*. Mutual abuse does not clearly negate malice, and, again, drug use might reduce a charge of Murder of the First to Murder of the Third, but not to Voluntary Manslaughter. *See Commonwealth v. Milburn*, 413 A.2d 388, 388 (Pa. 1980). Other statements, such as that about an officer's Spanish-language proficiency or that Xavier was thought by several people to have been inebriated on the day of the murder, are irrelevant and waived. *See* Appellant Br. at 19. Xavier puts too much weight on these testimonies, claiming that they show "a reasonable

---

[1] Xavier makes much of witness statements as to his intoxication at various times. His intent in doing so is not always clear. *See* Appellant Br. at 19. Under Pennsylvania law, intoxication cannot reduce a charge of murder to voluntary manslaughter. *Commonwealth v. Milburn*, 413 A.2d 388, 388 (Pa. 1980) ("[M]urder of the third degree does not require specific intent, and voluntary intoxication neither precludes conviction of that offense nor reduces it to voluntary manslaughter."). And if he means to cast doubt over portions of his statements to police, such evidentiary questions are waived by his guilty plea.

probability that, but for trial counsel's deficient performance . . . Xavier would have gone to trial and would be serving a shorter sentence for manslaughter." Appellant Br. at 21. They do no such thing.

Xavier also faults counsel for not further pursuing ambiguities as to the murder weapon. The Commonwealth's theory was that Parlanti was killed with a sink post; Xavier contends that he used a tire jack. He argues that counsel's failure to resolve ambiguities as to the murder weapon is evidence of her deficiencies and proves that she did not take the investigation seriously. Appellant Br. at 20 n.23; Reply Br. at 2.

There are two flaws in that argument. First, Xavier's choice of weapon is not dispositive of malice. One could use a tire jack in a crime of malice or in the heat of passion just as one could a sink post. If Xavier has an argument for why the choice of weapon clearly weighs in favor of a heat-of-passion crime, he has not articulated it here. Second, if there was ambiguity as to the murder weapon, Xavier is partly to blame: in his oral guilty plea colloquy, he affirmatively indicated that he hit the victim "on a number of occasions with a metal post which had been used to prop up a sink." App. 107. Because a defendant pleading guilty is bound by the statements that he makes under oath in open court, he cannot subsequently change his story. *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. Ct. 2011). Nor was his counsel ineffective for declining to investigate theories that would contradict those statements made under oath.

We cannot deny that there may be other facts that could have been discovered and other testimony that could have been taken. But "reasonable" investigation is not

7

maximal investigation. *Strickland*, 466 U.S. at 691. An attorney is not required to pursue every morsel of information that might bear upon her client's case. *See Harrington*, 562 U.S. at 108. Here, the facts that were already available to LaBarbera offered significant evidence from which a jury would likely conclude that Xavier acted with malice. Under the "heavy measure of deference" that we afford to criminal defense counsel in these situations, we cannot say that a defense attorney presented with the evidence that LaBarbera had is unreasonable in declining to investigate further. *Strickland*, 466 U.S. at 691.[2] Therefore, we cannot say that she was ineffective in advising him to plead rather than to roll the dice.

IV

Under *Strickland*, Xavier has failed to show that his counsel's declination to further investigate evidence going to malice was unreasonable. 466 U.S. at 691. The District Court therefore did not err when it denied Xavier's habeas petition. We will affirm the denial.

---

[2] Pursuant to 2254(d), our review of an ineffective-assistance-of-counsel claim adjudicated on the merits in state court is reviewed under a doubly deferential standard.